**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
**GREEN BAY DIVISION**

| | |
|---|---|
| **LAURA FERGUSON**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**MARKETSOURCE INSURANCE SERVICES, LLC, formerly known as SALELYTICS, LLC,**<br><br>Defendant. | Case No.: ______________<br><br>Collective & Class Action |

**COLLECTIVE AND CLASS ACTION**
**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Laura Ferguson ("Ferguson" or "Plaintiff"), individually and on behalf of all others similarly situated, hereby brings this Collective and Class Action Complaint against Defendant MarketSource Insurance Services, LLC, f/k/a Salelytics, LLC ("Salelytics" or "Defendant"), and states as follows:

**INTRODUCTION**

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the common law.

2. Defendant operates a business process outsourcing and contact-center enterprise that provides outsourced sales, customer service, and other over-the-phone support to third-party

clients.[1] To provide these services, Defendant employed (and continues to employ) numerous customer service representatives, sales agents, team leads, and other call center employees—including Plaintiff and the individuals who make up the putative collective and class. While exact job titles may differ, the employees who worked in these hourly call center roles were subjected to the same or similar unlawful pay practices for similar work throughout the United States.

3. Among other engagements, Defendant staffed and operated a call center program servicing the Medicare and health-insurance products of Elevance Health (formerly Anthem) and its affiliates, through which Plaintiff and other hourly employees made and received calls with prospective and enrolled members.

4. Upon information and belief, Defendant employs hundreds of people in call-center roles across the United States, including at facilities in Appleton, Wisconsin; San Antonio, Texas; and Indianapolis, Indiana.

5. Defendant used a number of titles, including but not limited to "Licensed Sales Agent," "Agent," and "Team Lead," to refer to the hourly employees who provided over-the-phone support to customers, members, beneficiaries, and third parties (collectively referred to herein as "Agents").

6. Defendant classified its Agents as non-exempt and tasked them with the primary duty of providing over-the-phone customer service and sales support.

7. Defendant employed Ferguson as an hourly call center employee with the job titles of Licensed Sales Agent and, later, Team Lead.

[1] "MarketSource Acquires Salelytics," https://www.marketsource.com/news/marketsource-acquires-salelytics/ (last accessed October 13, 2026); Salelytics LinkedIn, https://www.linkedin.com/company/salelytics (last accessed October 8, 2026).

8. The United States Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's hourly call center employees, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[2]

9. One of those abuses, which is at issue in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id.* at p. 2.

10. More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id.*

11. Defendant violated the FLSA and the common law by systematically failing to compensate its Agents for work tasks completed before and after their scheduled shifts and during their unpaid meal periods, when they were not logged into Defendant's timekeeping system, and by shaving and adjusting recorded time to avoid paying for hours worked. This resulted in Agents not being paid for all hours worked, whether at the employee's base rate in non-overtime weeks, or at the overtime premium in weeks where Agents worked at least forty (40) hours.

12. More specifically, Defendant failed to compensate Agents for the substantial time they spent performing activities such as turning on and booting up their computers, launching and

---

[2] *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers (last accessed October 13, 2026).

logging into a dozen or more work applications, and shutting those applications down, as well as work performed during unpaid meal periods and after the scheduled end of the shift.

13. Plaintiff seeks a declaration that her rights, and the rights of the putative collective and class members, were violated, a judgment awarding them unpaid back wages, liquidated damages, attorneys' fees and costs to make them and the putative collective and class whole for the damages they suffered, and any other remedies to which they may be entitled, and to help ensure Defendant will not subject future workers to the same illegal conduct in the future.

14. At the earliest time possible, Plaintiff will request that the Court authorize notice of this action pursuant to 29 U.S.C. § 216(b) to all similarly situated employees who worked for Defendant at any time in the past three years.

## JURISDICTION AND VENUE

15. This Court has subject-matter jurisdiction over Plaintiff's FLSA claim, pursuant to 28 U.S.C. § 1331, because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

16. Additionally, this Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer… in any Federal or State court of competent jurisdiction."

17. This Court has supplemental jurisdiction over Plaintiff's common-law breach of contract and unjust enrichment claims pursuant to 28 U.S.C. § 1367 because those claims and the federal claims are so closely related that they form part of the same case or controversy under Article III of the United States Constitution.

18. Defendant's annual sales exceed $500,000, and Defendant employs more than two individuals; thus, the FLSA applies in this case on an enterprise basis. Defendant's Agents engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

19. This Court has general personal jurisdiction over Defendant because it is headquartered in and maintains its principal place of business in Appleton, Wisconsin, which is located within this District, such that Defendant is at home in this District.

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides in this District, a substantial part of the events giving rise to Plaintiff's claims occurred in this District, and Defendant conducts business in this District.

## **PARTIES**

21. Plaintiff Laura Ferguson is a resident of San Antonio, Texas, and worked for Defendant as a non-exempt Agent from on or about April 8, 2024 through on or about June 3, 2026. Defendant first employed Ferguson as an hourly Licensed Sales Agent and, on or about August 12, 2024, promoted her to the hourly position of Team Lead. Defendant compensated Ferguson through the payment of an hourly rate, most recently $26.00 per hour. Ferguson signed a consent to join this collective action, which is attached as Exhibit A.

22. Ferguson's paystubs were issued by both Salelytics, LLC and MarketSource Insurance Services.

23. Additional Opt-In Plaintiffs were or are employed by Defendant as Agents during the past three years and their consent forms will also be filed in this case.

24. Defendant is a limited liability company with its principal place of business located in Appleton, Wisconsin. Salelytics, LLC was acquired by MarketSource Solutions, Inc., in September 2023 and was later renamed MarketSource Insurance Services, LLC.[3] MarketSource Solutions, Inc., is, in turn, a direct subsidiary of or indirect subsidiary of Allegis Group, Inc. *Id.*

---

[3] "MarketSource Acquires Salelytics," https://www.marketsource.com/news/marketsource-acquires-salelytics/ (last accessed October 13, 2026).

25. At all relevant times, Defendant was the employer of Plaintiff and the putative collective and class members within the meaning of the FLSA. Defendant had the power to hire and fire, controlled work schedules and conditions of employment, determined the rate and method of payment, and maintained employment records for Plaintiff and the putative collective and class.

## GENERAL ALLEGATIONS

26. Prior to hiring prospective Agents, Defendant provided them with a written offer setting forth the job requirements and rate of pay.

27. Defendant maintained documents demonstrating the promised hourly wage for each Agent including, but not limited to, offer letters, paystubs, and/or other payroll records. For example, Defendant provided Ferguson with a written offer of employment stating an hourly rate of $21.00 per hour for the Licensed Sales Agent position.

28. Plaintiff received an offer from Defendant to work as an Agent and accepted Defendant's offer with the understanding that her base hourly rate would be paid for all hours worked.

29. Plaintiff performed under her agreement with Defendant by carrying out her job duties and responsibilities. More specifically, as an Agent, Plaintiff made and answered calls with prospective and enrolled members, provided over-the-phone customer service and sales support regarding Medicare and health-insurance products, evaluated and advised callers, and documented interactions in Defendant's systems. As a Team Lead, Ferguson additionally monitored and supported hourly Agents, listened to and reviewed calls for quality assurance, coached Agents, and maintained numerous trackers and spreadsheets, all while remaining an hourly, non-exempt employee. Plaintiff additionally performed the required unpaid off-the-clock work explained below.

30. Defendant paid its Agents at varying hourly rates.

31. Defendant's Agents, including Plaintiff, typically worked five (5) days each week and up to, and on occasion more than, forty (40) hours per week. While Defendant has access to all payroll records, Plaintiff does not, and there were one or more instances during Plaintiff's employment when she worked forty (40) hours or more in a workweek and less than forty (40) hours in a workweek.

32. Defendant provided training to hourly employees on, inter alia, how to carry out their day-to-day job duties; how to load and log into their computer programs at the beginning of the day; how to track their time in Defendant's timekeeping system; how attendance would be monitored; call quality expectations; and Defendant's numerous policies and procedures. The training that Defendant provided to all of its Agents was substantially the same.

33. For purposes of compensation, Defendant's Agents clocked in and out for their shifts on their computers using Defendant's timekeeping application. During the relevant period, Defendant used the ADP timekeeping system and later transitioned to the Kronos timekeeping system.

34. At all relevant times, Defendant controlled Plaintiff's and all other Agents' work schedules, duties, protocols, applications, assignments, and employment conditions.

35. Defendant required Plaintiff and all other Agents, regardless of their title, to use a computer and a variety of essential and indispensable computer programs, applications, and servers in order to perform their job duties, including a remote desktop application, an internet browser, Microsoft Outlook, Microsoft Teams, Citrix, Salesforce, an Amazon Web Services dialing system, the timekeeping application, and numerous client and reference programs and trackers.

36. Defendant instructed Plaintiff and other similarly situated Agents to be "call ready" the moment their scheduled shifts started, regardless of whether they were Agents or Team Leads. This required Defendant's Agents to perform daily off-the-clock tasks prior to the start of their shifts and before they clocked into Defendant's timekeeping system. During the boot-up and login process, Defendant's Agents frequently experienced technical difficulties, system crashes, or updates, increasing the amount of off-the-clock work they performed that day.

37. Defendant's Agents necessarily had to perform off-the-clock work every shift because Defendant relied exclusively on a timekeeping system that was accessible only within the computer to track its Agents' hours worked. Therefore, Defendant's Agents were unable to clock in unless and until they performed off-the-clock work before the start of their scheduled shifts and before they could access and log into (and therefore clock into) the program.

38. Defendant enforced its "call ready" policy through its uniform compensation, attendance, and adherence procedures, and the call quality assurance system it used to monitor and grade Agents' calls. For example, Defendant routinely evaluated, and at times disciplined, Agents based on responsiveness, communication, availability, timeliness, attendance, adherence to schedules, and work quality. Further, Defendant assessed and evaluated its Agents' handling of calls.

39. Defendant's Agents used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and indispensable part of the Agents' work, and Agents could not perform their jobs without them.

40. Defendant's Agents also performed off-the-clock work when returning from lunch and preparing themselves to be call ready the moment their meal periods concluded.

41. Similarly, Defendant's Agents, including Plaintiff, performed work off-the-clock at the end of their scheduled shift, after clocking out of Defendant's timekeeping system, when they shut down and logged out of the programs and applications that they utilized during their shifts, and, in the case of Team Leads such as Ferguson, when they reconciled and finalized the timekeeping of the Agents they supervised.

42. The pre-, mid-, and post-shift off-the-clock time Plaintiff and Defendant's Agents spent booting up, logging into, and shutting down their computers, applications, and programs directly benefitted Defendant and was integral and indispensable to the Agents' job responsibilities.

43. As a result of the pre-, mid-, and post-shift off-the-clock work described herein, together with Defendant's practice of shaving and adjusting recorded time as described below, Plaintiff and other Agents were unlawfully deprived of approximately fifteen (15) to thirty (30) minutes of compensation, and often more, every shift.

44. At all relevant times, Defendant was able to track the amount of time Plaintiff and other Agents spent in connection with the pre-, mid-, and post-shift activities; however, Defendant failed to do so and failed to compensate them for the off-the-clock work they performed, thus breaching its agreements with Plaintiff and other Agents.

45. Indeed, in light of the explicit and long-standing DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

46. Despite knowing Plaintiff and all other Agents performed this pre-, mid-, and post-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

47. Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and similarly situated Agents booted up and logged into their computers each shift, along with their clock-in and clock-out times in the timekeeping system.

48. Because Defendant required its Agents, including Plaintiff, to perform pre-, mid-, and post-shift work off-the-clock, and because Defendant shaved and adjusted recorded time, the hours tracked in Defendant's timekeeping system are inaccurate representations of the total amount of time Agents spent working for Defendant. Thus, the hours reflected on the Agents' paystubs are also inaccurate representations of the hours they actually worked.

**A. Pre-Shift Off-the-Clock Work**

49. The off-the-clock pre-shift process took substantial time, approximately five (5) to thirty (30) minutes per shift, and on occasion substantially longer. Specifically, before each shift, Agents were required to undertake essential work tasks such as turning on or warming up their computer; waiting for the computer to turn on and, on occasion, download updates; logging into their computer with a username and password; opening a remote desktop application and internet browser; logging into Defendant's intranet, email, and numerous client applications; opening the trackers and spreadsheets necessary to perform their work; logging into Defendant's timekeeping system; and clocking in.

50. Ferguson, for example, routinely arrived twenty (20) to thirty (30) minutes before the start of her scheduled shift in order to turn on her computer and open the twelve (12) to fifteen (15) or more programs, applications, and trackers she needed to perform her job, yet Defendant permitted her to clock in no earlier than five (5) minutes before the start of her scheduled shift. She was expected to prepare for the day and complete her job duties during those five minutes in order to assist the Agents she oversaw at the start of their scheduled shifts. On days when

Defendant's antiquated systems were slow, lagging, or down, this off-the-clock startup process took considerably longer, and on at least one occasion Ferguson was unable to clock in for hours due to system issues while still performing work.

51. Defendant's Agents had to complete this process while off-the-clock, before the start of their scheduled shifts and before fielding calls. Consequently, the Agents had to begin working before their scheduled shifts to complete their start-up and log-in activities.

52. Defendant's Agents were not compensated for all of this time because Defendant prohibited and/or prevented Agents from clocking into its timekeeping software before they performed some, if not all, of the pre-shift off-the-clock work.

53. The pre-shift off-the-clock work Agents performed directly benefited Defendant and was integral and indispensable to their job duties and responsibilities as Agents.

**B. <u>Meal-Period Off-the-Clock Work</u>**

54. Defendant promised its Agents one unpaid meal period during each shift.

55. Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal period. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods.*** Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be <u>completely relieved</u> from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

56. Defendant did not provide Agents with legitimate bona fide meal periods because it required the Agents to return to their computer stations prior to the end of their unpaid meal

periods to log back in and place themselves in a "ready" state so they could resume taking calls promptly at the end of their scheduled meal periods.

57. If Agents were not logged back into the phone system and ready to take calls promptly at the conclusion of their scheduled meal periods, they were considered out of adherence and could be subjected to disciplinary action.

58. The login process during meal periods was truncated because the Agents' computers were already on and many of the programs that they used during their scheduled shifts remained open; however, Agents spent approximately five (5) minutes performing this off-the-clock work during their unpaid meal periods. Thus, Defendant maintained a common policy and practice pursuant to which it failed to pay Agents for no less than five (5) minutes of work performed during their meal periods.

59. In addition, Plaintiff and other Agents frequently worked through all or part of their unpaid meal periods entirely. For example, Ferguson regularly ate at her desk while monitoring live calls, assisting Agents, and speaking with members, and routinely cut her thirty (30)-minute meal period short by several minutes to clock back in on time, all without compensation. During the annual enrollment period and other busy seasons, Ferguson worked through her unpaid meal period nearly every day.

60. The off-the-clock work Plaintiff and other Agents performed during their meal periods was compensable, directly benefited Defendant, and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to the Agents' job duties and responsibilities.

61. Defendant's management knew or should have known that Plaintiff and other Agents performed this off-the-clock work, but permitted and even rewarded it through Defendant's schedule adherence metrics.

### C. Post-Shift Off-the-Clock Work

62. Pursuant to Defendant's policies, training, and direction, Plaintiff and similarly situated Agents were required to clock out as soon as their scheduled shift ended or the moment they finished fielding their last call for the day and before shutting down their systems and computer. Plaintiff and other Agents were not allowed to begin the logout and shutdown process until they completed their last fielded call.

63. This resulted in Plaintiff and other Agents performing additional minutes of off-the-clock work every shift. In Ferguson's case, as a Team Lead she was required to remain until all of the Agents she supervised had finished their calls and clocked out, which regularly caused her to work five (5) to ten (10) minutes—and on occasion as much as fifty (50) minutes—beyond the scheduled end of her shift, in addition to the time she spent shutting down and logging out of her programs and reconciling her Agents' and her own time records.

64. The post-shift off-the-clock work Plaintiff and other Agents performed was compensable, directly benefited Defendant, and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to the Agents' job duties and responsibilities.

65. Unpaid wages related to the off-the-clock work described herein are owed to Plaintiff at the FLSA-mandated overtime premium of one and one-half times Plaintiff's regular hourly rate for those workweeks in which she worked in excess of forty (40) hours.

### D. Defendant's Time-Shaving Results in Unpaid Overtime and Viable "Gap Time" Claims

66. In addition to the off-the-clock work described above, Defendant maintained a policy and practice of instructing Plaintiff and other Agents to alter, adjust, or reduce their recorded time so that their paid hours would not exceed forty (40) in a workweek. For example, Ferguson was told to "cut" her hours to keep them at or under forty (40), was required to justify any overtime, and was directed to take longer unpaid meal periods to offset overtime she had already worked, notwithstanding that she continued to perform work during those periods. Upon information and belief, Defendant also ceased paying certain overtime after the annual open-enrollment period each year.

67. "Gap time" claims are those "in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Kinkead v. Humana at Home, Inc.*, 450 F. Supp. 3d 162, 182 (D. Conn. 2020); *see also Conner v. Cleveland Cty., N.C.*, 22 F.4th 412, 426 (4th Cir. 2022) ("we hold that overtime gap time claims are cognizable under the FLSA").

68. Plaintiff and all similarly situated Agents regularly worked non-overtime hours (i.e., "gap time") for which they were not paid.

69. During the weeks that Agents did not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices was a deprivation of straight-time wages, in breach of Defendant's agreements with them.

## NATIONWIDE COLLECTIVE ACTION ALLEGATIONS

70. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of herself and on behalf of:

> *All current and former hourly Agents who worked for Defendant at any time during the three years preceding the filing of this Complaint up through and including judgment.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

72. Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside salespersons.

73. Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

74. Consistent with Defendant's policies and practices, Plaintiff and the proposed FLSA Collective were not paid for all regular and/or premium overtime compensation in workweeks during which they worked forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein.

75. All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work Plaintiff and the proposed FLSA Collective performed.

76. Defendant was aware, or should have been aware, that federal law required it to pay Plaintiff and the proposed FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

77. As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

a. Willfully failing to pay its employees, including Plaintiff and the FLSA Collective members, for all regular hours they worked off-the-clock in non-overtime workweeks;

b. Willfully failing to pay its employees, including Plaintiff and the FLSA Collective members, for all overtime gap time and premium overtime wages for hours they worked off-the-clock in excess of forty (40) hours per workweek; and

c. Willfully failing to record all of the time that its employees, including Plaintiff and the FLSA Collective members, worked for the benefit of Defendant.

78. Defendant's unlawful conduct was (and is) widespread, repeated, and consistent.

79. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

80. The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues are the same for every proposed FLSA Collective member, to wit: whether the FLSA Collective members are (1) required to work uncompensated boot-up, log-out, meal-period, and related time; and (2) entitled to their regular hourly wage in non-overtime workweeks, overtime gap time in applicable weeks, and overtime for hours worked over forty (40) in a week.

81. Plaintiff estimates that the FLSA Collective, including both current and former Agents during the relevant period, includes at least hundreds of members. The precise number should be readily available from a review of Defendant's personnel and payroll records.

82. The FLSA Collective should be notified of this action and allowed to opt in pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the FLSA Collective members, who have been unlawfully deprived of pay in violation of the FLSA, will be

unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendant.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

83. Plaintiff brings Counts II and III of this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> *All current and former hourly Agents who worked for Defendant at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

85. The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

86. There is a well-defined community of interest among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions include, but are not limited to, the following:

a. Whether Defendant failed to keep accurate time and payroll records for Plaintiff and the Rule 23 Nationwide Class;

b. Whether the pre- and mid-shift time Rule 23 Nationwide Class members spent on startup and login activities each shift is compensable time under applicable law;

c. Whether the post-shift time Rule 23 Nationwide Class members spent closing all programs, applications, and networks is compensable time under applicable law;

d. Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

e. Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

87. Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that she and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises, and course of conduct as all other Rule 23 Nationwide Class members' claims, and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

88. Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class, and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel has interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

89. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

90. This case will be manageable as a Rule 23 class action. Plaintiff and her counsel know of no unusual difficulties in this case, and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

91. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

92. Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class, and because declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
## FLSA COLLECTIVE ACTION
## VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, ET SEQ. – FAILURE TO PAY OVERTIME

93. Plaintiff re-alleges and incorporates all previous paragraphs herein.

94. At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq.*

95. At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

96. At all times relevant to this action, Plaintiff and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

97. At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

98. Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

99. Plaintiff either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

100. The FLSA requires an employer to pay employees for all hours worked and the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

101. The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. § 516.1, *et seq.*

102. At all times relevant to this action, Defendant engaged in an unlawful policy and practice of requiring Plaintiff and all the proposed FLSA Collective members to perform pre-, mid-, and post-shift work off the clock, every shift, and of shaving and adjusting recorded time, and failed to pay these employees their regular hourly rate for all hours worked in non-overtime workweeks, overtime gap time in weeks where it occurred, and the federally mandated overtime compensation for all work performed over forty (40) hours per week.

103. The off-the-clock work performed every shift by Plaintiff and the proposed FLSA Collective was an essential part of their jobs, and these activities and the time associated with these activities were significant and not *de minimis*.

104. In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, all of this overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including shift differential where applicable. 29 U.S.C. § 207. Further, all "gap time" should have been paid at Plaintiff's and the FLSA Collective's regular hourly rate.

105. As a result of Defendant's unlawful policies and practices, Plaintiff and the FLSA Collective members were deprived of both straight-time and overtime wages in violation of the FLSA.

106. Defendant's violations of the FLSA were knowing and willful. Defendant could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for all work activities, but did not.

107. Plaintiff and all others similarly situated are entitled to back pay as well as liquidated damages in an amount equal to their back pay. As a result of Defendant's FLSA violations, Plaintiff and all others similarly situated are owed unpaid wages and overtime wages at a rate to be calculated using payroll and other employment records Defendant is statutorily required to maintain under 29 U.S.C. § 211(c).

108. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## COUNT II
## RULE 23 NATIONWIDE CLASS ACTION
## BREACH OF CONTRACT

109. Plaintiff re-alleges and incorporates all previous paragraphs herein.

110. At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendant.

111. Each Rule 23 Nationwide Class member's contractual hourly rate is identified in paystubs and other records that Defendant prepares as part of its regular business activities.

112. Evidence of these contracts includes Defendant's letters offering employment, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment at a specified, above-minimum wage for Agent work, which Plaintiff accepted and performed, but Defendant failed to perform by paying Plaintiff and the Rule 23 Nationwide Class the promised wages.

113. For example, Defendant offered to compensate Plaintiff if she agreed to perform services for Defendant as an Agent. Plaintiff accepted Defendant's offer and performed her duties as an Agent in reliance on the offer.

114. Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with the pre-, mid-, and post-shift work described herein.

115. By not paying Plaintiff and every other Rule 23 Nationwide Class member their fixed, pre-agreed-upon hourly rate for all of the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

116. Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this Complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

117. Plaintiff's and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour, but for less than forty (40) hours per week (i.e., pure "gap time" claims for non-overtime hours/workweeks).

118. Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Nationwide Class members spent performing off-the-clock activities, which is a fundamental part of an employer's job.

119. As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

**COUNT III**
**RULE 23 NATIONWIDE CLASS ACTION**
**UNJUST ENRICHMENT**

120. Plaintiff re-alleges and incorporates all previous paragraphs herein.

121. This Count is pled in the alternative to Count II, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)–(3).

122. At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for Defendant's benefit.

123. Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

124. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed-upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

125. Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

126. Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom. Despite this, Defendant did not pay Plaintiff and the Rule 23 Nationwide Class members for all of their work.

127. Upon information and belief, Defendant used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance its various business ventures or pay its equity owners.

128. Defendant was unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

129. Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort, and their resources in a profitable manner.

130. As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to loss of wages.

## RELIEF REQUESTED

WHEREFORE, Plaintiff requests the following relief:

a. An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b. An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts II and III);

c. An Order compelling Defendant to disclose in computer format, or in print if no computer-readable format is available, the names and addresses of all proposed FLSA Collective members and Rule 23 Nationwide Class members, and authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

d. An Order designating Plaintiff as representative of the FLSA Collective and the Rule 23 Nationwide Class, and undersigned counsel as Class Counsel for the same;

e. An Order declaring that Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f. An Order declaring that Defendant's violations of the FLSA were willful;

g. An Order declaring that Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class (or, in the alternative, that Defendant was unjustly enriched) by failing to pay them for the mandatory pre-, mid-, and post-shift work activities described herein at a pre-established (contractual) regular hourly rate;

h. An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the FLSA Collective, and the Rule 23 Nationwide Class the full amount of damages and liquidated damages available by law;

i. An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in prosecuting this action as provided by statute;

j. An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

k. An Order awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: October 14, 2026

Respectfully Submitted,

*/s/ Mark R. Miller*
Mark R. Miller
Illinois Bar No. 6283542

Julia Ozello
Illinois Bar No. 6336504
Attorneys for Plaintiff
**WALLACE MILLER**
200 West Madison Street, Suite 3400
Chicago, Illinois 60606
Telephone: (312) 261-6193
mrm@wallacemiller.com
jo@wallacemiller.com